# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| NANCY LYNN BENTLEY, | No. 23-CV-1008-CJW-KEM |
| Plaintiff, | **ORDER** |
| vs. | |
| SYMETRA LIFE INSURANCE COMPANY and BRITTANY BRAINARD, | |
| Defendants. | |

## I. INTRODUCTION

This matter is before the Court on plaintiff's Motion to Remand to State Court. (Doc. 20). Defendant Brainard timely resisted. (Doc. 21). For the following reasons, the Court **denies** plaintiff's motion.

## II. FACTUAL BACKGROUND

On February 14, 2020, plaintiff and James Lavern Bentley ("decedent") married. (Doc. 6, at 2). On November 3, 2022, decedent changed the beneficiary of two separate life insurance policies—both provided by defendant Symetra Life Insurance Company ("Symetra")—from plaintiff to Brittany Brainard (Brainard) who is decedent's daughter, effective January 1, 2023. (*Id.*, at 2); *see also* (Docs. 13-2, at 2; 13-4). On November 8, 2022, plaintiff filed for dissolution of the marriage. (Doc. 6, at 2). That same day, the state court issued an injunction preventing either party from removing their spouse from any health or life insurance coverage then in effect until adjudication of the dissolution. (*Id.*). On February 12, 2023, decedent passed away. (*Id.*, at 2); *see also*

1

(Docs 13-2, at 2; 13-6). Then, on March 15, 2023, Symetra paid Brainard $300,000 in proceeds from her father's life insurance policies. (Doc. 13-1, at 4).

### III.  PROCEDURAL BACKGROUND

On March 20, 2023, plaintiff filed a "Petition in Equity" in Dubuque County, Iowa against Symetra and Brainard. (Doc. 3-1, at 5–7). That same day, in the same Iowa District Court, plaintiff also filed an "Ex Parte Motion for Temporary and Permanent Injunction" against Symetra and Brainard seeking to freeze the life insurance proceeds. (*Id.*, at 9–10). On April 13, 2023, Symetra removed the case to this Court on the basis of federal question jurisdiction. (Doc. 1).

On April 14, 2023, plaintiff filed with this Court an "Amended Petition in Equity" identical to her state court petition. (Doc. 6). In her petition, plaintiff alleges decedent assigned a beneficiary—Brainard—to decedent's two life insurance policies despite the fact that marital funds paid for both policies and despite the November 8, 2022, state court injunction. (*Id.*, at 2–3). Plaintiff's petition requests that "the Court enter an order directing either party in possession of any life insurance proceeds [*i.e.*, Symetra or Brainard] . . . to pay those proceeds directly to [plaintiff], and any further relief the Court finds equitable and just in the premises." (*Id.*, at 3).

On April 14, 2023, plaintiff also filed with this Court an "Ex Parte Motion for Temporary and Permanent Injunction," identical to her state court motion, seeking to freeze the life insurance proceeds. (Doc. 7). On May 23, 2023, the Court issued an order denying plaintiff's motion. (Doc. 15).

On October 28, 2023, plaintiff filed a Notice of Voluntary Dismissal Without Prejudice, which contained a stipulation to the dismissal of all plaintiff's claims against Symetra, signed by plaintiff's counsel and Symetra's counsel.[1] (Doc. 19). That same

---

[1] Although failing to state any applicable law, plaintiff appears to have attempted to effectuate a voluntary dismissal under Federal Rule of Civil Procedure 41(a), which permits a plaintiff to

day, plaintiff filed a Motion to Remand to State Court in which plaintiff seeks to remand the case—consisting now of an action solely against Brainard—back to the Iowa District Court. (Doc. 20).

## IV. APPLICABLE LAW

"A district court has no discretion to remand a claim that states a federal question." *Gaming Corp. of Am. v. Dorsey & Whitney*, 88 F.3d 536, 542 (8th Cir. 1996).

Under the "well-pleaded complaint" rule, a federal cause of action must appear on the face of the complaint in order for a case to be heard in a federal district court based on federal question jurisdiction. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). "A federal defense, including the defense that one or more claims are preempted by federal law, does not give the defendant the right to remove to federal court." *Gaming Corp.*, 88 F.3d at 542–43. This is because, in general, "[t]he defense of preemption can prevent a claim from proceeding, but . . . it does not convert a state claim into a federal claim." *Id.* at 542–43. In other words, under the well-pleaded complaint rule, a

---

voluntarily dismiss "an action" without a court order by filing "a stipulation of dismissal signed by all parties who have appeared." FED. R. CIV. P. 41(a)(1)(A)(ii). The word "action" has produced some confusion, leading several courts to conclude that the word "action" as used in Rule 41 denotes the entire controversy, meaning that a plaintiff cannot, under Rule 41(a), dismiss only *one* defendant from among several defendants in a case, but must instead do so by way of Rule 15 (governing pleading amendments) or Rule 21 (stating that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party"). *See, e.g.*, *Harvey Aluminum, Inc. v. Am. Cyanamid Co.*, 203 F.2d 105, 108 (2d Cir. 1953); *see also* 9 WRIGHT & MILLER, FED. PRAC. & PROC. CIV. § 2362 nn. 8–9 (4th ed.) (collecting cases). The Court of Appeals for the Eight Circuit has observed, however, that "it may not be material whether the court acts under Rule 15(a) . . . or Rule 21 . . . or Rule 41(a)(2)" with respect to the appropriate Rule to drop one defendant from among several in a given case. *Johnson v. Cartwright*, 355 F.2d 32, 39 (8th Cir. 1966); *see also* 9 WRIGHT & MILLER, FED. PRAC. & PROC. CIV. § 2362 ("The power to drop some plaintiffs or defendants from the suit plainly exists, either explicitly in the Federal Rules or in the district court's inherent power."). Here, the Court finds plaintiff's notice of voluntary dismissal sufficient to dismiss all of plaintiff's claims against Symetra without prejudice—if not under Rule 41(a)(1)(A)(ii), then under Rule 21, construing plaintiff's notice as a granted motion to drop Symetra. Symetra is dismissed from this case.

3

defendant's assertion that a state law claim is preempted by federal law generally does not give rise to federal question jurisdiction.

The doctrine of "complete preemption," however, "provides an exception to the well-pleaded complaint rule" which yields distinct jurisdictional consequences, allowing purported state law claims to "convert" into claims stating a federal question and giving rise to federal question jurisdiction. *Id.* at 453. Complete preemption occurs when a federal statute has "extraordinary pre-emptive power" over certain state laws. *Id.* (citing *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65, (1987)). A statute with such preemptive power "wholly displaces the state-law cause of action." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004) (citing *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8 (2003)). The result is that state law claims appearing on the face of a complaint are "considered to be converted into federal causes of action." *Gaming Corp.*, 88 F.3d at 543 (citing *Metro Life,* 481 U.S. at 65; *Avco Corp. v. Machinists*, 390 U.S. 557 (1968)). This rule derives from the theory that when Congress enacts a statute that is so powerful as to wholly displace state causes of action, "a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." *Beneficial Nat. Bank*, 539 U.S. at 7–8.

Thus, the jurisdictional consequence of state law claims falling within the preemptive scope of a completely preemptive federal statute is such that those claims "make out federal questions" giving rise to federal question jurisdiction. *Gaming Corp.*, 88 F.3d at 453. The consequence on the issue of remand, in particular, is that such claims "may not be remanded to state court under 28 U.S.C. § 1367(c) even though they purport to raise only issues of state law." *Id.* at 550.

The Employee Retirement Income Security Act of 1974 ("ERISA"), Title 29, United States Code, Chapter 18 is "one of these statutes" by which state law claims are converted into federal law claims by way of complete preemption. *Aetna Health*, 542

4

U.S. at 208.  ERISA is a federal law which comprehensively regulates, among other things, employee welfare benefit plans that, "through the purchase of insurance or otherwise," provide medical, surgical, or hospital care, or benefits in the event of sickness, accident, disability, or death.  29 U.S.C. § 1002(1).  ERISA's civil enforcement mechanism, Title 29, United States Code, Section 1132(a) represents a classic example of a statutory provision which commands complete preemptive power over purported state causes of action falling within its preemptive scope.[2]  *See Aetna Health*, 542 U.S. at 207–09.  Whether a given cause of action has a sufficient relationship to an employee benefit plan determines the scope of ERISA's preemption.  *Metro. Life*, 481 U.S. at 62–63.  In general, all state law claims "relating to" an employee benefit plan are preempted by ERISA's civil enforcement mechanism, Section 1132(a).[3]  *Id.*  As the Court of Appeals for the Eighth Circuit has explained:

> The ERISA civil enforcement mechanism is one of those provisions with such extraordinary pre-emptive power that it converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.  Any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted.

*Ibson v. United Healthcare Servs., Inc.*, 776 F.3d 941, 945 (8th Cir. 2014) ("*Ibson I*") (cleaned up); *see also Opheim v. Standard Ins. Co.*, 293 F. Supp. 3d. 846, 853 n.3 (S.D. Iowa 2018).  Thus, any purported state law claim that falls within the preemptive scope of ERISA's exclusive set of remedies under Section 1132(a) is converted into a claim that

---

[2] The Supreme Court first articulated, indeed created, the doctrine of complete preemption under Section 1132(a) of ERISA as a basis for federal question removal jurisdiction under Title 28, United States Code, Section 1441(a) in *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58 (1987).

[3] The exception to this rule—irrelevant here—comes by way of ERISA's "saving clause," which excepts from preemption state laws which regulate insurance.  *See* 29 U.S.C. § 1144(b)(2)(A).

5

states a federal question, rendering remand of such a claim improper. *See Gaming Corp.*, 88 F.3d at 542.

Among its set of remedies, Section 1332(a) of ERISA "provides a cause of action for an ERISA participant or beneficiary . . . to recover benefits due *to him* under the terms of his plan." *Ibson v. United Healthcare Servs., Inc.*, 877 F.3d 384, 387–88) (8th Cir. 2017) ("*Ibson II*") (quoting 29 U.S.C. § 1332(a)(1)(B)) (emphasis added by the *Ibson II* court).[4] A plaintiff seeking to recover such benefits may petition a court specifically under Section 1132(a)(3)(B) in order to obtain "*appropriate equitable relief* to redress violations . . . of ERISA or the terms of the plan." *Id.* at 388 (quoting *CIGNA Corp. v. Amara*, 563 U.S. 421, 438 (2011)) (emphasis added by the *CIGNA* court).

## V. DISCUSSION

Plaintiff's argument in support of her Motion to Remand is, in essence, structured as follows: (1) plaintiff asserts that whatever her claims against Brainard may be, those claims are brought under state law; (2) plaintiff concedes that her claims against Brainard fall within the supplemental jurisdiction of the Court under Title 28, United States Code, Section 1367 as claims arising out of the same case or controversy as plaintiff's federal

---

[4] Under ERISA, a "participant" is an "employee . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan." 29 U.S.C. § 1002(B)(7). A "beneficiary" is a "person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(B)(8).

6

claim against Symetra under ERISA,[5;6] and that the Court maintains discretion under Section 1367(c) to either remand the state law claims or keep them in federal court; and (3) plaintiff urges the Court to choose to remand the claims. (Doc. 20-1, at 4–5).

---

[5] Plaintiff's petition does not state whether decedent obtained his life insurance policies through his employer. Symetra's petition for removal, however, states that Symetra provided the policies at issue under a "Group Life Policy" funded by an employee welfare benefit plan provided by decedent's employer. (Doc. 1, at 1–2). Because such plans are governed by ERISA, Symetra's petition for removal asserted that removal on the basis of federal question jurisdiction was proper under Title 28, United States Code, Section 1331, even though plaintiff's petition does not explicitly allege a claim under ERISA. (*Id.*, at 2) (citing *Aetna Health, Inc. v. Davila*, 542 U.S. 200 (2004)). Plaintiff has not contested the validity of this basis for removal, and indeed appears to concede as much in her Motion to Remand, which explains by way of background that "Symetra removed the case to federal court . . . pursuant to federal question jurisdiction" and recognizes the federal nature of her action as against Symetra by conceding that the Court retains supplemental jurisdiction over her claims against Brainard even though, in plaintiff's view, the case no longer contains "claims which supported supplemental jurisdiction [*i.e.*, plaintiff's federal claims against Symetra under ERISA]." (Doc. 20-1, at 3–4).

[6] Plaintiff points out that in Symetra's petition for removal, Symetra asserted that "Brainard's consent is not required for this removal" because, in Symetra's view, since Brainard "is not an ERISA fiduciary, there cannot be any claims against her under ERISA," implying that any claims against Brainard are state law claims. (Doc. 1, at 3) (citing 28 U.S.C. § 1441(c) (requiring the consent to removal by other defendants against whom a federal claim is asserted, but not by other defendants against whom only state law claims are asserted)). Plaintiff suggests that Brainard's failure to challenge this portion of Symetra's petition for removal functions as a concession from Brainard that plaintiff's claims against her are state law claims. (Doc. 20-1, at 3). Plaintiff reads too deeply here. Brainard was not required, and thus had no incentive, to challenge the soundness of Symetra's legal basis for removal in this instance, for the outcome (*i.e.*, removal of the case to this Court) would not have changed, regardless of whether Brainard believed the claims against her were state law claims or federal law claims. Brainard's failure to challenge her co-defendant Symetra's petition for removal (filed by separate counsel) can be most rationally understood to imply that, had Symetra instead characterized the claims against Brainard as federal in nature, Brainard would have consented to removal as required by the removal statute; and therefore Brainard's failure to correct what may have been Symetra's mistake (*i.e.*, refraining from attempting to argue by way of clarification that plaintiff's claims against Brainard were *also* federal in nature) was, at the time of removal, irrelevant insofar as both defendants would ultimately find the case being removed to this Court, one way or the other. Thus, the Court does not hold Brainard's failure to challenge Symetra's petition for removal against her to the extent she resists remand here, as Brainard's failure to challenge her co-defendant Symetra's characterization of plaintiff's claims is not incongruent with Brainard's

7

In resistance to plaintiff's Motion to Remand, Brainard first argues that although plaintiff's petition does not clearly articulate the legal theory upon which it is based, the petition ultimately amounts to a claim "that Symetra wrongly paid benefits to Brainard that should have been paid to plaintiff as a beneficiary of an employee welfare benefit plan." (Doc. 21, at 2). In Brainard's view, because the petition "does not purport to raise more than a single claim that is asserted jointly against the two defendants," and because that claim is a federal claim under ERISA, the Court therefore continues to have federal question jurisdiction over the action as against Brainard, rendering remand improper. (*Id.*, at 2–3). Further—specifically in response to plaintiff's argument, raised in her motion, that she possesses state law claims against Brainard—Brainard argues that "[t]o the extent that the plaintiff intended to assert unspecified state law claims based on Symetra's payment of benefits to Brainard, those claims are preempted by ERISA," rendering those claims federal law claims. (*Id.*, at 3). In the alternative, Brainard argues that "[i]f the petition can be read as stating additional state law claims against Brainard that are not preempted by ERISA, the court should exercise its discretion not to remand those claims to state court." (*Id.*, at 4).

To decide the propriety of remanding, the Court must first determine the precise nature of the claim(s) plaintiff has raised against Brainard in her petition. If plaintiff has raised only federal law claims, then the Court continues to have federal question jurisdiction over the case, rendering remand improper. Embedded within this analysis is the consideration of whether, even if plaintiff has purportedly raised state law claims against Brainard, those state law claims may fall within the scope of ERISA's completely preemptive civil enforcement provisions (being therefore rendered federal law claims).

---

position here that plaintiff's claims against her are indeed federal, regardless of Symetra's position on the issue.

Plaintiff's petition alleges decedent changed the beneficiary on his life insurance policy to Brainard, a change which plaintiff alleges to be wrongful because decedent did so in violation of a state court injunction prohibiting such a change. (Doc. 6). Although plaintiff concedes that decedent requested the beneficiary change prior to the issuance of the state court injunction (*i.e.*, prior to November 8, 2022), plaintiff asserts that the actual change in beneficiary election was not to take effect until January 1, 2023. (*Id.*, at 2). Plaintiff's petition implies that Symetra wrongly disbursed the proceeds to Brainard because plaintiff figures herself, not Brainard, to have been the rightful beneficiary of the life insurance policy upon decedent's death. Plaintiff's petition then requests that "the Court enter an order directing either party in possession of any life insurance proceeds [*i.e.*, Symetra or Brainard] . . . to pay those proceeds directly to [plaintiff], and any further relief the Court finds equitable and just in the premises." (*Id.*, at 3). Thus, plaintiff's claim, in effect, states a claim for restitution against Brainard in which plaintiff seeks to recover the proceeds for herself. *See Restitution*, Black's Law Dictionary (11th ed. 2019) (defining restitution as "[r]eturn or restoration of some specific thing to its rightful owner or status"); RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 1 (Am. L. Inst. 2011) ("The usual consequence of a liability in restitution is that the defendant must restore the benefit in question or its traceable product, or else pay money in the amount necessary to eliminate unjust enrichment.").

The question is whether the relief plaintiff seeks against Brainard falls within the preemptive scope of ERISA's remedial provisions. For the following reasons, the Court finds the answer to be in the affirmative, ultimately compelling the conclusion that the Court maintains federal question jurisdiction over the case and rendering remand improper.

The case of *Harris Trust & Savings Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238 (2000), addresses the key issue here—namely, whether ERISA's remedial

9

framework governs claims for restitution to recover plan assets from a transferee defendant. In *Harris Trust*, the trustee of a pension plan purchased interests in a motel from a broker-dealer, and these interests later proved to be worthless. 530 U.S. at 242–43. The trustee sued the broker-dealer under ERISA, alleging that the broker participated as a nonfiduciary party in interest in a prohibited transaction, and the trust sought restitution of the original asset purchase price. *Id.* at 241–43. The Supreme Court of the United States stated that Section 1132(a)(3) of ERISA's enforcement provisions—which tasks the court with providing "appropriate equitable relief" for the purpose of "redress[ing any] violations or . . . enforc[ing] any provisions" of ERISA or an ERISA plan—"imposes certain duties" independent of any substantive provision of ERISA, and "therefore . . . liability under [Section 1132(a)(3)] does not depend on whether ERISA's substantive provisions impose a specific duty on the party being sued." *Id.* at 245. The Court ultimately held that, although the broker-dealer was not a fiduciary, it could be subject to liability under Section 1132(a)(3). In so doing, the Court made clear that Section 1132(a)(3) "admits of no limit (aside from the "appropriate equitable relief" caveat) on the universe of possible defendants." *Id.* at 246.

The *Harris Trust* Court further held that equitable restitution is an action embraced by, and appropriate under, Section 1132(a)(3) when a plan participant or beneficiary seeks to recover ill-gotten ERISA plan assets from a defendant who received those assets in a transaction "tainted" by an ERISA fiduciary's breach of fiduciary duty. *Id.* at 250–53. Adhering to the common law of trusts, the Court explained:

> [I]t has long been settled that when a trustee in breach of his fiduciary duty to the beneficiaries transfers trust property to a third person, the third person takes the property subject to the trust, unless he has purchased the property for value and without notice of the fiduciary's breach of duty. The trustee or beneficiaries may then maintain an action for restitution of the property . . . .
>
> . . .

> Importantly, that a transferee was not "the original wrongdoer" does not insulate him from liability for restitution.

*Id.* at 250–51.[7] Thus, the Court held that "an action for restitution against a transferee of tainted plan assets satisfies the 'appropriate[ness]' criterion in [Section 1132](a)(3)" and that "[s]uch relief is . . . 'equitable' in nature,[8]" rendering Section 1132(a)(3) the

---

[7] The *Harris Trust* Court went on to explain that, as to a given transferee-defendant against whom such restitution is sought, the liability threshold is consistent with the common law of trusts such that "[o]nly a transferee of ill-gotten trust assets may be held liable, and then only when the transferee (assuming he has purchased for value) knew or should have known of the existence of the trust and the circumstances that rendered the transfer in breach of the trust." 530 U.S. at 251. The corollary to this rule, following the common law of trusts, appears to be that in the case of a defendant who does *not* take the trust assets for value, *i.e.*, a donee, the donee takes the assets subject to the trust and may be liable to the rightful beneficiary under a theory of equitable restitution, regardless of notice. *See* RESTATEMENT (SECOND) OF TRUSTS § 289 cmt. a (AM. L. INST. 1959) ("The interest of the beneficiary in the trust property is not cut off by a transfer by the trustee in breach of trust to a third person if no value is given for the transfer, although the transferee had no notice that the transfer was in breach of trust; and the beneficiary can in equity compel the third person to restore the property to the trust. If the third person has not disposed of the property or otherwise changed his position when he receives notice that the transfer was in breach of trust . . ., he holds the property upon a constructive trust for the beneficiary of the trust.").

[8] The Court specifies that the restitution sought by the trustee in *Harris* was equitable in nature because a claimant under Section 1132(a)(3)(B), by its terms, may seek only "equitable relief" as distinct from legal relief. "Equitable relief under [Section] 1132(a)(3)(B) 'is limited to those categories of relief that were typically available in equity during the days of the divided bench (meaning, the period before 1938 when courts of law and equity were separate.'" *Ibson II*, 877 F.3d at 389–90 (quoting *Montanile v. Bd. of Trustees of Nat'l Elevator Indus. Health Benefit Plan*, 577 U.S. 136, 142 (2016)) (emphasis omitted). Such "classic" equitable remedies include injunctive, restitutionary, and mandamus relief. *Knieriem v. Grp. Health Plan, Inc.*, 434 F.3d 1058, 1061 (8th Cir. 2006) (citing *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 257–58 (1993); *Kerr v. Charles F. Vatterott & Co.*, 184 F.3d 938, 943 (8th Cir. 1999)). Yet, not *all* forms of "restitutionary" relief are equitable. Only *equitable* restitution is available under Section 1132(a)(3)(B), whereas *legal* restitution (i.e., compensatory damages) is not. *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212–214 (2002) (explaining that "for restitution to lie in equity"—as distinct from a restitutionary action at law—"the action generally must seek . . . to restore to the plaintiff particular funds or property in the defendant's possession," with equitable relief to be granted "ordinarily in the form of a constructive trust or an equitable lien" through a court order effectively requiring the defendant to return the identified money or

11

applicable provision by which a claimant may pursue such claims for recovery of ERISA plan assets. *Id.* at 253.

A claim under state law for restitution of ERISA plan assets "duplicates . . . the ERISA civil enforcement remedy" of Section 1132(a)(3) providing for the same relief. *See Ibson I*, 776 F.3d at 945. Accordingly, the completely preemptive power of Section 1132(a)(3) displaces and converts into federal law claims any such state law causes of action for restitution of ERISA plan assets. *See Ibson I*, 776 F.3d at 945.

Here, although plaintiff describes her claims as state law claims, plaintiff's claim for restitution which the Court deciphers from her petition falls squarely within the embrace of ERISA's preemptive remedial provisions—namely, Section 1132(a)(3)(B)—thus converting plaintiff's state law claim against Brainard into a federal claim for restitution of ERISA plan assets. Within the framework of ERISA, among its substantive provisions, Section 1104(a)(1)(A) provides that an ERISA plan fiduciary "shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries" and shall do so "for the exclusive purpose of . . . providing benefits to participants and their beneficiaries." 29 U.S.C. § 1104(a)(1)(A)(i). Thus, a transfer of ERISA plan assets, *i.e.*, the life insurance proceeds, by Symetra to Brainard—when the latter is alleged to be a wrongful beneficiary, hence in actuality a nonbeneficiary—would violate the plain language of Section 1104(a)(1)(A). If indeed Brainard is not the rightful beneficiary under the plan, this would make the proceeds in her hands "tainted" by a fiduciary breach. *See Harris Trust*, 530 U.S. at 253. Brainard, as an improper donee, would then be subject to liability in an action for restitution of those assets under Section

---

property "to a plaintiff who was, in the eyes of equity, the true owner"); *see also Pharmacia Corp. Supplemental Pension Plan, ex rel. Pfizer Inc. v. Weldon*, 126 F. Supp. 3d 1061, 1069 (E.D. Mo. 2015). Here, plaintiff manifestly seeks equitable restitution by way of her petitioned request that the Court order the insurance proceeds to be transferred from Brainard, an allegedly improper donee of the assets, to plaintiff, the alleged rightful beneficiary. *See* (Doc. 6).

1132(a)(3)(B), as such a remedy would constitute "appropriate equitable relief" by way of the Court directing the transfer of the assets from Brainard to plaintiff *if* the latter could indeed show that she is, in the eyes of equity, the true owner. *See id.* at 250–53; *supra* notes 6–7.

Accordingly, plaintiff's petitioned request that the Court direct the transfer of the proceeds from Brainard to plaintiff constitutes a claim for restitution which, although purportedly made under state law, is converted into a federal law claim for "appropriate equitable relief" in the form of restitution under ERISA's Section 1132(a)(3)(B). *See Aetna Health*, 542 U.S. at 207–09; *Harris Trust*, 530 U.S. at 250–253. Being so "converted" by ERISA's completely preemptive power, plaintiff's claim for restitution states a federal question for purposes of the well-pleaded complaint rule, vesting the Court with federal question jurisdiction over the claim. *Ibson I*, 776 F.3d at 945. Because the Court "has no discretion to remand a claim that states a federal question," *Gaming Corp.*, 88 F.3d at 542, the Court **denies** plaintiff's Motion to Remand to State Court.

To be clear, in denying the motion to remand, the Court expresses no opinion as to the merits of plaintiff's claim. In determining whether to remand, the Court must assume plaintiff's case had merit to analyze whether it belongs in federal court.

## VI. CONCLUSION

For these reasons, the Court **denies** plaintiff's Motion to Remand to State Court. (Doc. 20). The Court considers plaintiff's Notice of Voluntary Dismissal of Symetra Life Insurance Company, (Doc. 19), proper under Federal Rule of Civil Procedure 21 and **dismisses** Symetra from this case. On or before December 20, 2023, the parties are directed to submit to the Clerk of Court for approval by the magistrate judge a proposed scheduling order setting forth deadlines for the filing of the administrative record and briefs. (*See* Doc. 9).

**IT IS SO ORDERED** this 6th day of December, 2023.

_____
C.J. Williams
United States District Judge
Northern District of Iowa